IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Applicant,

v.

SEARS, ROEBUCK AND CO.,

        Respondent.

---

**Memorandum In Support of
Application for an Order to Show Cause Why an
Administrative Subpoena Should Not Be Enforced**

---

This case is before the Court on the application of the Equal Employment Opportunity Commission ("EEOC" or "Commission") for an order to show cause why an administrative subpoena should not be enforced. The EEOC is currently investigating a charge of race discrimination filed against Sears, Roebuck and Co. ("Sears" or "Respondent") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In the course of its investigation, the EEOC issued a subpoena seeking documents relating to that investigation. The Respondent to date has refused to produce requested documents, and that refusal has delayed and hampered the investigation of the charge. The EEOC therefore applies to this Court to issue an Order to Show Cause why the Subpoena should not be enforced.

## I.  FACTUAL BACKGROUND

The Charging Party filed a charge of discrimination alleging that Sears discriminated against her on the basis of her race. [Exhibit 2]. Ms. Kerrah Johnson, who is African American, was employed as a cashier at the Sears store located at 14200 East Alameda Avenue in Aurora, Colorado. In her charge, Ms. Johnson alleges that during her employment she was given unfavorable job assignments due to her race. She also alleges that she was suspended and then terminated when she asked for a copy of her timecard to give to the authorities to prove that she was not involved in a crime. [*Id.*] Ms. Johnson alleged that Sears' actions were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

The EEOC sent the Respondent notice of the charge and began to investigate whether Title VII had been violated. [Exhibit 1 (Declaration of Nancy Sienko, Denver Field Office Director ("Dir. Decl.") ¶ 4) & Exhibit 3]. As part of its investigation, EEOC obtained a position statement from Respondent, which was submitted on February 25, 2009. [Exhibit 4]. In its statement, Sears alleges that Ms. Johnson was suspended pursuant to its arrest policy. Sears' arrest policy provides that employees are required to report any arrest within five days. [Exhibit 5 - policy]. According to the policy, when an employee reports that he or she has been arrested, Sears will then make a determination as to whether or not continued employment poses an unacceptable risk to the Company customers, associates, associate morale and/or assets. [*Id.*] Failure to report an arrest or conviction may result in disciplinary action, up to and including termination. [*Id.*] According to Sears, Ms. Johnson reported that she had been arrested

for robbery and therefore Sears decided to remove Ms. Johnson for up to 60 days and informed Ms. Johnson that if she was cleared of the charges in the next 60 days, she should be placed back on the schedule.[1]  [Exhibit 4].

On March 6, 2009, EEOC sent a Request for Information seeking information concerning Respondent's arrest and conviction policy.  Specifically, EEOC sought the following information for the time period from January 2006 through the present:

   1.  Produce all written guidance provided to Sears employees regarding the implementation of Sears' policy requiring the reporting of arrests and convictions (which policy was provided to the EEOC as Enclosure Number 3 to Sears' position statement).

   2.  Produce all documentation that clarifies the purpose and intent behind Sears' policy requiring the reporting of arrests and convictions and all documentation that explains how Sears expects the policy to be carried out.

   3.  Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy.  Provide the employee's name, position, race, national origin, whether the employee reported an arrest or a conviction, what crime the arrest or conviction was for, each employee's store location, each employee's social security number, and what action Sears took in response to the report.

   4.  Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions.  Provide the employee's name, position, race, national origin, last known contact information, how Sears came across the information regarding the arrest or conviction that was not reported, and what the arrest or conviction was for.

   5.  Identify all employees terminated due to a conviction.  Provide the employee's name, position, race, national origin, each employee's date of hire, what crime each employee committed, the date of the crime(s), the date of the termination, each employee's store location, and each employee's social security number.

   6. Provide a copy of the employee handbook, including EEO policy, background checks, and criminal record policies.

---

[1] Ms. Johnson was never arrested for robbery.  Rather, a male who was driving her car assaulted another individual in a road rage incident.

7. Provide a copy of Charging Party's job description.

8. Provide a copy of Charging Party's personnel records.

9. Provide a copy of any and all documentation regarding Charging Party's suspension and termination.

10. Copies of all documentation regarding any call Charging Party may have made to the employee relations ethics hotline.

[Exhibit 6].

On March 30, 2009, EEOC received a response from Respondent to its Request for Information. [Exhibit 7]. Respondent refused to provide any information concerning any other employees affected by Sears' arrest and conviction policy. *Id.* Sears did provide a copy of its employee handbook, a job description for Ms. Johnson's job, and a copy of Ms. Johnson's personnel records. *Id.*

Because Sears refused to provide the requested information concerning its arrest/conviction policy, the EEOC served a subpoena on Sears requesting the same information. [Exhibit 8, Subpoena No. DE-009-00010)]. Specifically, EEOC requested the following:

1. Produce all written guidance provided to Sears employees regarding the implementation of Sears' policy requiring the reporting of arrests and convictions (which policy was provided to the EEOC as Enclosure Number 3 to Sears' position statement).

2. Produce all documentation that clarifies the purpose and intent behind Sears' policy requiring the reporting of arrests and convictions and all documentation that explains how Sears expects the policy to be carried out.

3. Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy from January 1, 2006 to the present. Provide the following:
   a. employee's name,
   b. position,

4

    c. race,
    d. national origin,
    e. whether the employee reported an arrest or a conviction,
    f. what crime the arrest or conviction was for,
    g. each employee's store location,
    h. each employee's social security number,
    i. what action Sears took in response to the report.

4.  Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions.  Provide the following:
    a. employee's name,
    b. position,
    c. race,
    d. national origin,
    e. last known contact information,
    f. how Sears came across the information regarding the arrest or conviction that was not reported,
    g. what the arrest or conviction was for.

5.  Identify all employees terminated due to Sears' arrest/conviction policy from January 1, 2006 to the present.  Provide the following:
    a. employee's name,
    b. position,
    c. race,
    d. national origin,
    e. date of hire,
    f. what crime each employee committed,
    g. the date of the crime(s),
    h. the date of the termination,
    i. each employee's store location,
    j. each employee's social security number.

6. Provide documentation of Sears' policy regarding background checks and criminal records.

7. Provide a copy of any and all documentation regarding the charging party's suspension and termination.

[Exhibit 8].

On May 8, 2009, Sears provided an incomplete response to the subpoena.  In response to the EEOC's request for information concerning employees terminated due

to Sears' arrest/conviction policy, Sears provided information only pertaining to the one store where the Charging Party worked. [Exhibit 10]. According to Sears, only one other individual reported an arrest, and this individual, who was white, was allowed to continue his employment. *Id.* Sears' response is insufficient. The EEOC is requesting information for all employees affected by Sears' arrest/conviction policy to determine whether this policy has a disparate impact on minority employees throughout the company, and thus whether Ms. Johnson was discriminated against when she was removed from the schedule and ultimately terminated, and whether other minority employees have been adversely affected by the policy.

**II.     ARGUMENT**

EEOC subpoena-enforcement proceedings are summary in nature and involve only limited judicial review. *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1277 (10th Cir. 2002) (not allowing "an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial"). To successfully petition a court to enforce an administrative subpoena, the Commission need only show that: (1) the subpoena is within the agency's authority; (2) the agency has satisfied statutory requirements of due process; and (3) the information sought is relevant to its investigation. *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 475-476 (4th Cir. 1986); *see also Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (1990). Once this showing has been made, a court will enforce the subpoena unless the Respondent can prove

that the subpoena is unduly burdensome. *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 476 (4th Cir. 1986).

1. **The subpoena is valid and within the agency's authority**.

Congress has authorized, and indeed mandated, that the EEOC investigate charges of discrimination alleging that Title VII has been violated. 42 U.S.C. § 2000e-5(b). Congress has conferred on the Commission broad powers of access to records of those entities against whom charges have been filed, 42 U.S.C. § 2000e-8(a), including the authority to subpoena evidence in an investigation, 29 U.S.C. § 161 (incorporated into Title VII by 42 U.S.C. § 2000e-9). The EEOC is investigating the Charging Party's allegations that the Respondent engaged in racial discrimination in violation of Title VII. Such an investigation is within the agency's statutory authority. Thus, the first prong of the test has been satisfied.

2. **All procedural prerequisites have been fulfilled**

The Charging Party filed a valid charge and the subpoena contains all the information required by the EEOC's regulations. Exhibits 2 and 8; 29 C.F.R. § 1601.16(a) (elements of subpoena);[2] *EEOC v. Shell Oil Co.*, 466 U.S. 54, 67-74 (1984) (addressing requirements of valid charge); 29 C.F.R. § 1601.12 (same). The

---

[2] 29 C.F.R. § 1601.16(a) states, in relevant part:

> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested. A subpoena shall be returnable to a duly authorized investigator or other representative of the Commission.

7

Respondent has not, and could not, allege that these basic requirements have not been met.

### 3. <u>The information sought is relevant</u>.

Finally, the information sought by the subpoena is relevant to the issue of race discrimination under investigation. The concept of relevancy during an EEOC investigation is broader than is that concept during litigation. Section 709(a) broadly grants the EEOC access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). Indeed, the Supreme Court has held that "since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that ***might cast light on*** the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984) (emphasis added); a*ccord EEOC v. Technocrest Systems, Inc.*, 448 F.3d 1035, 1038 (8th Cir. 2006); *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1274 (10th Cir. 2002). The Commission does not need to present a "specific reason for disclosure" of the requested information, *Univ. of Pa. v. EEOC*, 493 U.S. 182, 194 (1990), and courts generally will defer to the agency's appraisal of what is relevant "so long as it is not obviously wrong," *EEOC v. Guess?, Inc.*, 176 F. Supp. 2d 416, 421 (E.D. Pa. 2001).

Here, it is undeniable that the requested information "might cast light on the allegations against the employer." *Shell Oil Co.*, 466 U.S. at 68-69. The Charging Party alleges that she was discriminated due to her race after she requested a copy of

8

her timecard to share with the authorities. Sears has responded that she was terminated pursuant to its arrest policy. The EEOC seeks information concerning other individuals affected by the same policy, which is directly relevant to the issues raised in Ms. Johnson's charge of discrimination.

In its response to the EEOC's subpoena, Sears objected on the basis that the EEOC's subpoena is overbroad and seeks information that is not relevant to the charge. Presumably, Sears will argue that information regarding how its policy is instituted beyond the store where Ms. Johnson was employed is not relevant to the EEOC's investigation. The EEOC's investigation, however, is not so limited. As the Fourth Circuit has stated, a charge is the "starting point" for a reasonable investigation by the Commission.

> The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom….the charge merely provides the EEOC with a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices and that investigation may well disclose, as in this instance, illegal practices other than those listed in the charge.

*EEOC v. General Electric Company*, 532 F.2d 359 (4th Cir. 1976).[3] Similarly, the First Circuit has explained, the "[t]he allegations contained in a charge do not narrowly circumscribe the Commission's investigation. The charge is capable of supporting an EEOC investigation into both the discrimination described in the charge itself and into

---

[3] The General Electric Company case was cited with favor in the Supreme Court case of *General Telephone v. EEOC*, 446 US 318 (1980) which stated that any violations that the EEOC ascertains in the course of a **reasonable investigation** of the charging party's complaint are actionable. As the Supreme Court noted, when the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.

the surrounding circumstances (including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation). *EEOC v. Astra USA , Inc.*, 94 F.3d 738 (1st Cir. 1996).

Accordingly, many courts have enforced nationwide subpoenas based on an individual charge of discrimination. For example in *EEOC v. Technocrest Systems, Inc.*, 448 F.3d 1035 (8th Cir. 2006), the Eighth Circuit affirmed the District Court's order requiring the employer to produce information concerning all of its employees where six employees had filed charges of discrimination alleging that Technocrest discriminated against them and other Filipino workers. The Court also reversed the District Court's decision to quash the portion of the subpoena requesting personnel files of all employees. *Id.* at 1040. Technocrest had argued that the subpoena was overbroad because the employees worked at 65 different locations under different employees and thus were not similarly situated. *Id.* at 1039. Nevertheless, the Eighth Circuit ruled that the nationwide information sought by the EEOC was relevant to the individual charges of discrimination underlying the EEOC's investigation. *Id.*

Similarly, in *EEOC v. Aaron Brothers Inc.*, 620 F.Supp.2d 1102 (C.D. Cal. 2009) the Court ordered nationwide data where a single charging party alleged that she was paid less than her male colleagues and that other females as a class are paid less than males. Likewise, the Southern District of New York in *EEOC v. Morgan Stanley & Co.*, 132 F.Supp.2d 146 (S.D.N.Y. 2000) ruled that Morgan Stanley must produce all complaints of discrimination nationwide over a period of several years. In Morgan Stanley, four African-American employees brought race and/or sex discrimination

claims, one of which settled.  Morgan Stanley which employs 93,000 employees in 500 offices worldwide objected on the grounds of relevance and burdensomeness.  *Id.* at 149.  The Court rejected Morgan Stanley's arguments and ordered the company to produce all formal complaints of discrimination.  *Id.* at 161-62.

Finally, this Court recently ruled that the EEOC was entitled to obtain nationwide discovery based on an individual charge of discrimination.  *EEOC v. Patterson UTI Drilling, Inc.*, 09 cv 1562 PAB (Oct. 23, 2009).  The Court held that the individual charge of discrimination filed by Mr. Urenda "entitle[d] the EEOC to issue a subpoena seeking company-wide data" and that the nationwide data was relevant to the individual charge of discrimination.  (Exhibit 11, transcript of hearing at 37).

In this case, the nationwide information concerning employees affected by Sears' arrest/conviction policy is particularly relevant.  First, Sears' policy pursuant to which Ms. Johnson was suspended is a nationwide policy.  Second, since Ms. Johnson's charge implicates Sears' arrest/conviction policy, the EEOC must investigate whether the policy has a disparate impact on minority employees in order to determine whether Ms. Johnson, herself, was discriminated against.  In proving discrimination, plaintiffs can proceed under two distinct theories.  Discrimination can be proved by showing that an employer intentionally discriminated against an employee, or discrimination can be proved by establishing that a policy has a disparate impact on employees due to their race.  In a disparate-impact claim, the plaintiff challenges an employment practice that is "fair in form, but discriminatory in operation." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1312 (10th Cir. 1999) (internal quotation omitted).  Unlike a disparate

11

treatment claim, a claim of disparate impact "does not require a finding of intentional discrimination." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991).

In order to establish a *prima facie* case of discrimination by disparate impact, the plaintiff must identify the challenged employment practice or policy and demonstrate that the employment practice caused a significant disparate impact on a protected group under Title VII. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006). The most common way to establish that a policy has a disparate impact on a protected group is through statistics. *New York Transit Authority v. Beazer*, 440 U.S. 568, 584, (1979) ("A prima facie violation of Title VII may be established by statistical evidence showing that an employment practice has the effect of denying members of one race equal access to employment opportunities"); *Hallmark Developers, Inc. v. Fulton County, Ga.*, 466 F.3d 1276 (11th Cir. 2006) ("Typically, disparate impact in Title VIII case is demonstrated by statistics"). Accordingly, in order to determine whether Sears' policy has a disparate impact on minority employees, the EEOC must obtain sufficient data to determine whether Sears' arrest policy has a disparate impact on minorities. This requires enough data to analyze for statistical significance. This cannot be done with the data provided by Sears to date, just two individuals.

**C. Compliance With the Subpoena Does Not Impose an Undue Burden on the Respondent.**

The Court should enforce the subpoena unless the Respondent shows that the cost of compliance with the subpoena is "unduly burdensome in the light of the company's normal operating costs." *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479

(4th Cir. 1986).  A court will not excuse compliance with a subpoena on the grounds of burdensomeness unless the respondent establishes that compliance seriously threatens to disrupt or hinder the normal operation of a business.  *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 648 (7th Cir. 1995); *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993); *Maryland Cup*, 785 F.2d at 476-79.  The Respondent carries a "difficult burden" in this regard. *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002). "Conclusory allegations of burdensomeness are insufficient." *Id.*

In *Maryland Cup*, the court found that it was not unduly burdensome to require the company to spend $75,000 to compile information given that the employer did not show that this cost was burdensome in light of normal operating costs or that gathering the information would threaten operations. 785 F.2d at 479.  In *Quad/Graphics*, the respondent presented evidence that it would take over 200,000 hours to compile information in response to the subpoena, but the court concluded that the estimate was inflated especially in light of the EEOC's concession to accept a random sampling for ninety percent of the work. 63 F.3d at 648-49. In *Citicorp*, the employer submitted evidence that compliance with the subpoena would take two full-time employees six months, but the court rejected the claim of burdensomeness because the respondent did not offer any estimate of cost or show how compliance would impact its normal operations. 985 F.2d at 1040.

Here, the EEOC has not requested information that would be unduly burdensome to produce.  EEOC has only requested that Sears provide information

13

concerning employees affected by its arrest policy during a 3 year period of time. Sears has not provided any evidence that compiling such information would be unduly burdensome. Accordingly, EEOC respectfully requests that this Court order Respondent to comply with the subpoena.

Dated: February 10, 2010

                              Respectfully submitted,

                              MARY JO O'NEILL
                              Regional Attorney
                              Phoenix District Office

                              RITA BYRNES KITTLE
                              Acting Supervisory Trial Attorney
                              Tel. (303) 866-1347
                              rita.kittle@eeoc.gov

                              *s/ Stephanie Struble*
                              Stephanie Struble
                              Trial Attorney
                              Tel. (303) 866-1381
                              Fax (303) 866-1375
                              stephanie.struble@eeoc.gov

                              EQUAL EMPLOYMENT
                              OPPORTUNITY COMMISSION
                              Denver Field Office
                              303 East 17th Avenue, Suite 410
                              Denver, CO  80203
                              Attorneys for Plaintiff EEOC