**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-00288-WDM-KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                    Applicant,

v.

SEARS, ROEBUCK AND CO.,

                    Respondent.

---

**RESPONDENT'S RESPONSE TO APPLICATION FOR AN ORDER TO SHOW CAUSE
WHY AN ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

---

Pursuant to the Court's Order To Show Cause, dated February 16, 2010, Respondent Sears, Roebuck and Co. ("Sears" or the "Company"), by and through its undersigned counsel, respectfully submits this Response to Application For An Order To Show Cause Why An Administrative Subpoena Should Not Be Enforced ("Application").  For the reasons discussed below, the Court should deny enforcement of Applicant Equal Employment Opportunity Commission's ("EEOC") subpoena.

## I.      <ins>INTRODUCTION</ins>

Through its Application, the EEOC is attempting to enforce an unreasonably overbroad subpoena that seeks nationwide information relating to a Sears policy that requires associates to report any arrests or convictions to the Company within five days.  The Court should deny enforcement of the subpoena, which constitutes an unfounded fishing expedition, because the

EEOC has not met its burden of proving that the nationwide information sought by the subpoena is relevant to the underlying Charge of Discrimination filed by Karrah Johnson, which asserts only individual allegations of race discrimination. Second, even if the Court determines that the information sought is relevant, it should still deny enforcement because production of the information sought by the subpoena would place an undue burden on Sears.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Karrah Johnson's Individual Charge Of Discrimination

On or about November 24, 2008, Charging Party Karrah Johnson, a former Sears employee, filed a Charge of Discrimination ("Charge"), EEOC Charge No. 541-2009-00424, against Sears with the EEOC's Denver Office. *See* Exhibit 2 to the EEOC's Memorandum In Support Of Application For An Order To Show Cause As To Why An Administrative Subpoena Should Not Be Enforced ("EEOC's Memorandum"), Docket No. 2-3.

In her Charge, Ms. Johnson alleges that Sears discriminated against her based on her race, African-American. *See* Exhibit 2 to the EEOC's Memorandum. Ms. Johnson does not allege *any* other bases for discrimination.[1] *See id.* Specifically, Ms. Johnson alleges that Sears discriminated against her based on her race when it required her to paint, clean, and apply price stickers and when it suspended her for her involvement in a criminal act. *See id.* In her Charge, Ms. Johnson alleges that the earliest date on which the racial discrimination occurred was April 1, 2008 and that the latest date was July 10, 2008. *See id.* She does not allege a continuing violation. *See id.*

Notably, Ms. Johnson's Charge pertains only to alleged race discrimination that she,

---

[1] In her Charge, Ms. Johnson checked only the box for race discrimination. *See id.*

*individually*, experienced while employed by Sears.  Thus, in her Charge, she does not make *any* allegations about the treatment, either individually or as a class, of other African-American employees.

On February 25, 2009, Sears submitted a position statement in response to Ms. Johnson's Charge to the EEOC.[2]  *See* Exhibit 4 to the EEOC's Memorandum, Docket No. 2-5.  In the position statement, Sears denied that it discriminated against Ms. Johnson in any way.  With respect to her suspension, Sears explained that Ms. Johnson had been suspended pursuant to its Reporting Associate Arrests and Convictions Policy ("Arrest and Conviction Reporting Policy").  *See* Exhibit 5 to the EEOC's Memorandum, Docket No. 2-6.  According to that policy, associates are required to report any felony or misdemeanor arrest and/or conviction to the facility manager/coach within five (5) days.  *See id.*  Sears will then make a determination as to whether or not employment poses an unacceptable risk to Company customers, associates, associate morale, and/or assets.  *See id.*  Failure to report an arrest and/or conviction within five (5) days may result in disciplinary action, up to and including termination.  *See id.*

As explained by Sears in its position statement, in July 2008, Ms. Johnson informed Tonja Mills, Cashier Lead and Ms. Johnson's direct supervisor, that she had been accused of a crime (robbery) and needed a copy of her time card to prove to the court that she had been working on the day of the incident.  *See* Exhibit 4 to the EEOC's Memorandum.  Further, Ms. Johnson's grandmother called Ms. Mills and told her that Ms. Johnson had been arrested on July 9, 2008.  *See id.*  After Ms. Mills informed Catherine Brown, Human Resources/Office Lead, of the situation, Ms. Brown contacted Sears' Associate Services Organization on July 11, 2008, for

---

[2] The EEOC received Sears' position statement on February 27, 2009.  *See* Exhibit 1 to EEOC's Memorandum, Docket No. 2-2, ¶ 4(c).

guidance on how to proceed. *See id.* The Human Resources Consultant at the Associate Services Organization advised Ms. Brown about Sears' Arrest and Conviction Reporting Policy and recommended that Ms. Johnson remain unscheduled for up to 60 days. *See id.* Subsequently, Ms. Brown left Ms. Johnson a voicemail informing her that she needed to provide Sears with information relating to the arrest. *See id.* Ms. Brown further advised Ms. Johnson that if she was cleared of the charge within 60 days, she would be placed back on the schedule.[3] *See id.* Ms. Johnson never returned Ms. Brown's voicemail or provided Sears with any additional information relating to her arrest. *See id.* Accordingly, her employment with Sears was terminated for integrity reasons on September 9, 2008. *See id.*

**B.  EEOC's Request For Information For Company-Wide Information Relating To Sears' Arrest And Conviction Policy**

On March 6, 2009, the EEOC sent Sears a Request for Information. *See* Exhibit 6 to the EEOC's Memorandum. Although the Request for Information purportedly was made pursuant to the investigation of Ms. Johnson's individual Charge, the EEOC requested Company-wide information pertaining to Sears' Arrest and Conviction Reporting Policy that was completely unrelated to Ms. Johnson's individual allegations.[4] Among other things, the EEOC requested that Sears provide the following information from January 2006 to the present:

- Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy. Provide the employees' name, position, race, national origin, whether the employer reported an arrest or conviction, what crime the arrest or conviction was for, each employee's store location, each employee's social security number, and what action Sears took in response to the report.

---

[3] The EEOC's assertion that Ms. Johnson was never arrested for robbery is contrary to what was represented to Sears at the time. *See* EEOC's Memorandum, n. 1. Moreover, despite Ms. Brown's request, Ms. Johnson never contacted Sears to further discuss or clarify her situation.
[4] Moreover, the EEOC did not explain why it needed the Company-wide information in order to investigate Ms. Johnson's individual Charge.

- Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions.[5]   Provide the employee's name, position, race, national origin, last known contact information, how Sears came across the information regarding the arrest or conviction that was not reported, and what the arrest or conviction was for.

- Identify all employees terminated due to a conviction.[6]   Provide the employee's name, position, race, national origin, each employee's date of hire, what crime each employee committed, the date of the crime(s), the date of the termination, each employee's store location, and each employee's social security number.

*See* Exhibit 6 to the EEOC's Memorandum.

On March 30, 2009, Sears responded to the EEOC's Request for Information.   In its response, Sears objected to certain of the EEOC's requests, including the specific requests listed above, on the grounds that they were overly broad, unduly burdensome, and not relevant.   *See* Exhibit 7 to the EEOC Memorandum, Docket No. 2-8.   However, Sears did provide additional information and documentation in response to several of the EEOC's requests.   *See id.*[7]

## C.   EEOC's Subpoena For Information For Company-Wide Information Relating To Sears' Arrest And Conviction Policy.

On April 21, 2009, the EEOC served a subpoena *duces tecum*, No. DE-009-00010, on Sears, in which it requested the same or similar information that Sears had objected to providing in response to its Request for Information.   *See* Exhibit 7 to the EEOC's Memorandum, Docket No. 2-9.[8]   Again, although the subpoena purportedly was made pursuant to the investigation of

---

[5] This request is particularly irrelevant to Ms. Johnson's Charge of Discrimination because she was not terminated for failing to report an arrest or conviction, but rather because she failed to respond to Sears' request for additional information relating to her arrest.

[6] This request is particularly irrelevant to Ms. Johnson's Charge of Discrimination because she was not terminated due to a conviction, but rather because she failed to respond to Sears' request for additional information relating to her arrest.

[7] Specifically, as the EEOC acknowledges, Sears provided a copy of its employee handbook, a job description for Ms. Johnson's position, and a copy of Ms. Johnson's personnel records.  *See* EEOC's Memorandum, p. 4.  Sears also provided documents relating to Ms. Johnson's suspension and termination and confirmed that Ms. Johnson had not made any calls to the Company's ethics hotline.  *See* Exhibit 7 to the EEOC's Memorandum, p. 3.

[8] Sears received the subpoena on April 24, 2009.  *See* Exhibit 9 to the EEOC's Memorandum, Docket No. 2-10.

Ms. Johnson's individual Charge, the EEOC requested Company-wide information pertaining to

Sears' Arrest and Conviction Reporting Policy that was completely unrelated to Ms. Johnson's

individual allegations.[9]

Specifically, the subpoena directed Sears to provide the following information:

1.      Produce all written guidance provided to Sears employees regarding the implementation of Sears' policy requiring the reporting of arrests and convictions (which policy was provided to the EEOC as Enclosure Number 3 to Sears' position statement).

2.      Produce all documentation that clarifies that purpose and intent behind Sears' policy requiring the reporting of arrests and convictions and all documentation that explains how Sears expects the policy to be carried out.

3.      Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy from January 1, 2006 to the present.  Provide the following:

    a.   employee's name,
    b.   position,
    c.   race
    d.   national origin
    e.   whether the employer reported an arrest or conviction,
    f.   what crime the arrest or conviction was for,
    g.   each employee's store location,
    h.   each employee's social security number,
    i.   what action Sears took in response to the report.

4.      Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions.[10]  Provide the following:

    a.   employee's name,
    b.   position,
    c.   race,
    d.   national origin,
    e.   last known contact information,

---

[9] Again, the EEOC did not explain why it needed the Company-wide information in order to investigate Ms. Johnson's individual Charge.

[10] Unlike Request Nos. 3 and 5, this request was not limited in time from January 1, 2006 to the present.  As noted above, this request is particularly irrelevant to Ms. Johnson's Charge of Discrimination because she was not terminated for failing to *report* an arrest or conviction, but rather because she failed to respond to Sears' request for additional information relating to her arrest.

  f. how Sears came across the information regarding the arrest or conviction that was not reported,

  g. what the arrest or conviction was for.

5. Identify all employees terminated due to Sears' arrest/conviction policy from January 1, 2006 to the present.[11]  Provide the following:

  a. employee's name,
  b. position,
  c. race,
  d. national origin,
  e. date of hire,
  f. what crime each employee committed,
  g. the date of the crime(s),
  h. the date of the termination,
  i. each employee's store location,
  j. each employee's social security number.

6. Provide documentation of Sears' policy regarding background checks and criminal records.

7. Provide a copy of any and all documentation regarding the charging party's suspension and termination.[12]

*See* Exhibit 8 to the EEOC's Memorandum, Docket No. 2-9.

On May 8, 2009, Sears responded to the EEOC's subpoena.  *See* Exhibit 10 to the EEOC's Memorandum, Docket No. 2-11.  Sears provided complete responses to Request Nos. 1, 2, 6, and 7.  *See id.*  However, because Sears objected to Request Nos. 3, 4, and 5, the Company provided information relating only to the particular Sears store at which Ms. Johnson worked

---

[11] This request appeared for the first time in the subpoena.  As drafted, Request No. 5 is duplicative of Request No. 4, as both requests appear to seek information relating to employees who were terminated pursuant to Sears' Arrest and Conviction Reporting Policy.  To the extent that the EEOC is actually seeking information relating to employees who were terminated by Sears because of an arrest or conviction, as opposed to those employees who were terminated due to their failure to *report* an arrest or conviction to Sears, such a request is also duplicative of Request No. 3, which directs Sears to identify, among other things, all employees who reported arrests or convictions to Sears and the action that Sears took in response to each report, which will provide the EEOC with the information sought in Request No. 5.

[12] The subpoena included this request even though Sears had already provided all documents relating to Ms. Johnson's suspension and termination in response to the EEOC's Request for Information.  *See* Exhibit 7 to the EEOC's Memorandum, p. 3.

(Store No. 1141), as follows:

3.      Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy from January 1, 2006 to the present.   Provide the following: employee's name, position, race, national origin, whether the employer reported an arrest or conviction, what crime the arrest or conviction was for, each employee's store location, each employee's social security number, and what action Sears took in response to the report.

**Response:  Respondent objects to the request on the basis that it is overly broad, unduly burdensome and not relevant, for reasons described herein and in the position statement.  Subject to and without waiving its objection, Respondent provides the following response.  The only associate, at Respondent's store located at 14200 East Alameda Avenue, Aurora, CO 80012 (Sears #1141), other than Complainant, who has a reported arrest during the above-referenced time period is Receiving Associate Jason Howell (White; national origin unknown).**

**Mr. Howell informed Respondent that he was arrested in connection with an incident in which he grabbed his ex-wife's arm and led her out of his house, after she had entered his home and hit him.   Based on the police documentation provided by Mr. Howell, Respondent determined that Mr. Howell did <u>not</u> pose an unacceptable risk to the Company's customers, associates, morale and/or assets.   Accordingly, Respondent took no action against Mr. Howell.**

4.      Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions.   Provide the following: employee's name, position, race, national origin, last known contact information, how Sears came across the information regarding the arrest or conviction that was not reported, and what the arrest or conviction was for.

**Response:  Respondent did not terminate any associates for failing to report an arrest and/or conviction at Respondent's store located at 14200 East Alameda Avenue, Aurora, CO 80012 (Sears #1141) during the period January 1, 2006 to present.**

5.      Identify all employees terminated due to Sears' arrest/conviction policy from January 1, 2006 to the present.   Provide the following employee's name, position, race, national origin, date of hire, what crime each employee committed, the date of the crime(s), the date of the termination, each employee's store location, and each employee's social security number.

**Response:  See responses to #3 and #4 above.**

*See* Exhibit 10 to the EEOC's Memorandum.

Subsequently, the EEOC filed the instant Application, in which it seeks an Order from the Court directing Sears to provide nationwide information in response to Request Nos. 3, 4, and 5 above.

## III.  ARGUMENT

**A.  The Standard For Enforcement Of EEOC Subpoenas.**

An EEOC administrative subpoena may be judicially enforced only if it: (1) seeks relevant information; (2) is not unduly burdensome; and (3) is within the statutory authority of the EEOC.  *See EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 45 (6th Cir. 1994).  "[U]nlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access to only evidence 'relevant to the charge under investigation.'"  *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) (quoting 42 U.S.C. § 2000e-8; footnote omitted).  The charge requirement evidences "Congress' desire to prevent the Commission from exercising unconstrained investigative authority.'"  *Id.* at 65 (analyzing legislative history).  Consequently, a valid Charge of Discrimination "is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC."  *Id.*

"This statutory scheme places the burden on the EEOC to demonstrate the relevance of the information requested in its subpoena."  *EEOC v. Dillon Cos., Inc.*, 310 F.3d 1271, 1274 (10th Cir. 2002) (citing *EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001)).  Although the "'relevancy' limitation on the EEOC's investigative power is 'not especially constraining' . . . the relevance standard must not be interpreted so broadly as to render the statutory language a 'nullity.'"  *Dillon*, 310 F.3d at 1274 (quoting *Shell Oil*, 466 U.S.

at 68). Accordingly, the Seventh Circuit has stated:

> The requirement of relevance, like the charge requirement itself, is designed to cabin the EEOC's authority and prevent "fishing expeditions" . . . . [A]lthough the legitimate scope of the subpoena power includes information that "might throw light upon" the inquiry raised by the complaint, "the might" is "an indication of a realistic expectation rather than an idle hope that something may be discovered . . . . Absent a finding that the material sought is relevant, a court may not enforce an EEOC subpoena.

*EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002).

**B.     The Subpoena Should Not Be Enforced Because The Information Sought Is Not Relevant To The Allegations In The Charge.**

**1.     The Company-Wide Information Sought By The Subpoena Is Geographically Overbroad And Not Relevant To Ms. Johnson's Individual Charge Of Discrimination.**

In this case, the EEOC seeks to expand its investigation of Ms. Johnson's Charge, which alleges only that she, *individually*, was discriminated against because of her race, into a nationwide fishing expedition "concerning employees affected by Sears' arrest/conviction policy." EEOC's Memorandum, p. 11. The EEOC's explanation for why it needs this information – to determine whether Sears' Arrest and Conviction Policy has a disparate impact on minorities – evidences that the agency merely has "an idle hope that something may be discovered" in the requested information, rather than a "realistic expectation" that the information may shed light on Ms. Johnson's allegations. *United Air Lines*, 287 F.3d at 653. Because the EEOC has not met its burden of demonstrating that the Company-wide information relating to Sears' Arrest and Conviction Reporting Policy is relevant to Ms. Johnson's Charge, the Court should not enforce the EEOC's subpoena.

The EEOC mistakenly argues that "many courts have enforced nationwide subpoenas

based on individual charges of discrimination." EEOC's Memorandum, p. 10. However, in contrast to this case, in each of the cases cited by the EEOC for this proposition, the Charging Party had asserted *class* allegations in his or her Charge of Discrimination. *See EEOC v. Technocrest Systems, Inc.*, 448 F.3d 1035, 1040 (8th Cir. 2006) ("Because the six charging parties alleged not only individual discrimination but also discrimination against all Filipino employees of Technocrest, we find that the DOL and INS documents for all employees and the personnel files for all employees are relevant to a determination of whether Technocrest illegally discriminated on the basis of national origin."); *EEOC v. Aaron Brothers, Inc.*, 620 F. Supp. 2d 1102, 1007 (C.D. Cal. 2009) (finding that national data sought by the EEOC was "facially relevant and material" to the Charging Party's allegation that "[o]ther females as a class are paid less than males"); *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 161 (S.D.N.Y. 2000) (enforcing subpoena for Company-wide lists of employees and personnel records where the Charging Party made class allegations that "there has been continuous mistreatment of myself and other African-Americans in the Company"); *EEOC v. Patterson UTI Drilling, Inc.*, 09-cv-1562-PAB, Docket No. 21, pp. 5-6 (D. Colo. Oct. 23, 2009) (enforcing subpoena for company-wide information where Charging Party alleged that he "witnessed others being subjected to ethnic slurs. Non-Hispanic Caucasian workers were treated more favorably than I and the other Hispanics were being treated. My fellow Hispanic workers and I were prohibited from speaking Spanish on the job sites.").

Although it now argues that *Patterson UTI Drilling* stands for the proposition that courts enforce subpoenas for nationwide information based on individual Charges of Discrimination, during the hearing on the EEOC's Application to Enforce Administrative Subpoena in that case,

the EEOC argued that its nationwide subpoena should be enforced because the underlying Charge was "*not an individual charge of discrimination.*" *Id.*, p. 6.[13] In contrast, Ms. Johnson's Charge of Discrimination is limited only to allegations of race discrimination that she personally experienced. *See* Exhibit 2 to the EEOC's Memorandum. Because Ms. Johnson does not make any class allegations in her Charge, the EEOC's reliance on the above-referenced case law is misplaced.

Contrary to the EEOC's assertion, where, as here, a Charging Party has made *individual* allegations of discrimination, courts have refused to enforce subpoenas for nationwide information. *See Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178, 184 (10th Cir. 1973) (affirming district court's refusal to enforce request for information relating to all of respondent's stores); *EEOC v. Local 32B-32J, Service Employees Int'l Union*, No. M 8-85, 1992 U.S. Dist. LEXIS 4850, at *5-6 (S.D.N.Y. April 14, 1992) ("It is inconceivable to this court that the EEOC will actually need approximately five-thousand names to conduct an investigation in which it has produced only evidence of a single accusation in regard to a single apartment building. While the notions of relevancy in an EEOC investigation are broad, they are not limitless."). *Cf. EEOC v. Deutz-Allis Corp.*, No. 88-W-289-1, 1989 U.S. Dist. LEXIS 4969, at *4-5 (W.D. Mo. Jan. 30, 1989) (noting, in dicta, that the EEOC's previous request for company-wide records was overly broad and exceeded the limits of relevancy).

---

[13] Further, in *Patterson UTI Drilling*, the EEOC explained that its request for nationwide information was supported by the fact that its investigation into the underlying Charge of Discrimination had revealed six other allegations of national origin discrimination. *See id.*, p. 7. *See also EEOC v. New Prime, Inc.*, No. 02-3072-CV-S-3, 2002 U.S. Dist. LEXIS 19266, at * 7-8 (W.D. Mo. May 28, 2002) (enforcing EEOC subpoena for company-wide information where, because the EEOC had received several complaints of sexual harassment and discrimination, there was a realistic expectation that the information sought might cast light upon allegations lodged by the Charging Party). In contrast, in this case, the EEOC has proffered no such explanation for its request for nationwide information relating to Sears' Arrest and Conviction Reporting Policy.

Although the EEOC's requests are unreasonably broad in geographic scope, and thus seek information that is irrelevant to Ms. Johnson's individual Charge, Sears attempted to cooperate with the EEOC by providing responsive information for the specific store at which Ms. Johnson worked.  *See* Exhibit 10 to the EEOC's Memorandum.  "[I]n the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains . . . ."  *EEOC v. Packard Electric Division*, 569 F.3d 315, 318 (5th Cir. 1978).  *See also Joslin Dry Goods Co.*, 483 F.2d at 184 (affirming limitation of scope of subpoena from all of respondent's stores to the individual store where Charging Party was employed); *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1038 (10th Cir. 1993) (on appeal, district court's holding that overbroad requests for nationwide information relating to promotion policies should be limited to office where Charging Party worked was not challenged or overturned); *Deutz-Allis Corp.*, 1989 U.S. Dist. LEXIS 4969 (approving subpoena limited "to include only [comparable] persons in the same unit as the charging party, at about the same time as the charging party, and who were salaried").

Although the EEOC summarily argues that "to determine whether Sears' policy has a disparate impact on minority employees, the EEOC must obtain sufficient data to determine whether Sears' arrest policy has a disparate impact on minorities," it has not met its burden of proving that it requires *nationwide* information to perform such an analysis.   EEOC's Memorandum, p. 12.  *See Packard Elec. Div.*, 569 F.2d at 318 (affirming district court's denial of EEOC's request for plant-wide data on the grounds that "in the absence of some showing by the EEOC to the contrary, it is not immediately evident that this unit need be or is in this case the

entire facility or that an entire facility-wide workforce breakout bears on the subject matter of these individual complaints").  Accordingly, the EEOC's subpoena should not be enforced.[14]

### 2.   Information Relating To Employees' National Origin Is Not Relevant To Ms. Johnson's Allegations Of Race Discrimination.

Further, the EEOC has not met its burden of demonstrating that the national origin information it seeks in Request Nos. 3, 4, and 5 is relevant to Ms. Johnson's allegations of race discrimination.  Throughout its Memorandum, the EEOC acknowledges that Ms. Johnson has alleged *only* discrimination based on race.  *See* EEOC's Memorandum, pp. 1 ("The EEOC is currently investigating a charge of race discrimination . . . ."); 7 ("The EEOC is investigating the Charging Party's allegations that the Respondent engaged in racial discrimination in violation of Title VII."); 8 ("[T]he information sought by the subpoena is relevant to the issue of race discrimination under investigation;" "The Charging Party alleges that she was discriminated due to her race . . . .").

The EEOC has failed to advance any argument as to why the national origin information could possibly shed light on Ms. Johnson's charge of race discrimination.  Indeed, the EEOC requests are "contrary to Congress's intent to limit EEOC's investigative authority to those matters relevant to the charge under investigation."  *EEOC v. Southern Farm Bureau Cas. Ins. Co.*, No. 00-2153, 2000 U.S. Dist. LEXIS 15946, at *11 (E.D. La. Oct. 26, 2000) (internal quotations omitted), *aff'd*, 271 F.3d 209 (5th Cir. 1971).  In *Southern Farm Bureau*, the district court refused to enforce a subpoena seeking gender information when the underlying Charge of Discriminated alleged only race discrimination.  *See Southern Farm Bureau*, 2000 U.S. Dist.

---

[14] Although Request No. 4, as it appeared in the subpoena, was not limited in temporal scope, the EEOC has since acknowledged that it "has only requested that Sears provide information concerning employees affected by its arrest policy during a 3 year period of time."  EEOC Memorandum, p. 14.

LEXIS 15946, at *11-14.  As the court explained:

> Under EEOC's reasoning, a single charge filed against an
> employer would serve as a veritable key, opening the door into any
> matter that EEOC saw fit to investigate, regardless of the
> allegations in the original charge.  The fishing expeditions that
> could result from such an approach are clearly contrary to 42
> U.S.C. § 2000e-8 and the *Shell Oil* rationale.[15]

*Id.* at *12.  *See also Southern Farm Bureau*, 217 F.3d at 211-212 (finding that the EEOC was

unable to demonstrate the relevance of the gender information).[16]  Therefore, because they are

wholly irrelevant to Ms. Johnson's Charge of Discrimination, the EEOC's requests for national

origin information should be denied.[17]

## C.       Enforcement Of The Subpoena Would Place An Undue Burden On Sears.

"An administrative subpoena will not be enforced if it is overbroad or if compliance

would place undue burden on respondent."  *EEOC v. McCormick & Schmick's*, No. C 07-80065,

2007 U.S. Dist. LEXIS 38049, at * 18 (N.D. Cal. May 15, 2007).  "What is unduly burdensome

depends on the particular facts of each case and no hard and fast rule can be applied to resolve

the question."  *United Air Lines,*, 287 F.3d at 653.

Here, as detailed below, complying with the EEOC's subpoena would be *significantly*

---

[15] Further, in *Southern Farm Bureau*, unlike in this case, the EEOC had uncovered evidence of sex discrimination during the course of its investigation into the underlying charge of race discrimination, and the court still denied the EEOC access to the information.  *Southern Farm Bureau*, 217 F.3d at 211.  Here, in contrast, the EEOC's request for national origin information is completely unfounded.

[16] Sears acknowledges that in *Citicorp Diners*, the Tenth Circuit affirmed the district court's decision to grant the EEOC access to national origin information even though the underlying Charge of Discrimination alleged only race and sex discrimination.  *See Citicorp Diners*, 985 F.2d at 1039.  However, as the district court observed in *Southern Farm Bureau*, "any persuasive potential that the [*Citicorp Diners*] decision might have had is severely diminished by the court's inexplicable failure to address or even cite the Supreme Court's *Shell Oil* opinion."  *Southern Farm Bureau*, 2000 U.S. Dist. LEXIS 15946, at *10 n. 4.

[17] As noted above, Request No. 4, which seeks information relating to employees who were terminated for failing to report an arrest or conviction, is also irrelevant to Ms. Johnson's Charge of Discrimination because she was not terminated for failing to *report* an arrest or conviction, but rather because she failed to respond to Sears' request for additional information relating to her arrest.  "[T]he EEOC is entitled to access to only evidence 'relevant to the charge under investigation.'"  *Shell Oil Co.*, 466 U.S. at 64 (quoting 42 U.S.C. § 2000e-8; footnote omitted).

costly and time-consuming for Sears.  As described in the Declaration of Cathy Miller ("Miller Decl."), attached as Exhibit A, Sears does not maintain the information requested in the subpoena in one centralized location and therefore does not have one centralized way to search for this information.  Miller Decl., ¶ 5.  Therefore, in order to comply with the subpoena, Sears would have to gather information from four different sources: (1) the Inquiry Services Team; (2) the Associate Services Organization ("ASO"); (3) the Human Resources Compliance Department; and (4) the local stores (referred to as "units").  *Id.*, ¶ 6.

### 1.     The Inquiry Services Team

One way in which store management may have reported issues relating to employee arrests and convictions during the relevant time period is by calling Sears' Inquiry Services Team.  Miller Decl., ¶ 7.  From 2006 to in or about April 2008, the Inquiry Services Team employed Background Check Evaluators who, in addition to evaluating background check results of job applicants, handled calls from units on how to proceed when an incumbent associate reported an arrest or conviction or when the unit otherwise learned of an associate's arrest or conviction.  *Id.*  In or about April 2008, those job duties were transitioned to evaluators employed by a third party vendor in India.  *Id.*

Since January 2006, Sears (and its third party vendor) have conducted 38,051 background check inquiries. Miller Decl., ¶ 8.    Significantly, the case management system on which background check inquiries are stored cannot distinguish between background check inquiries involving incumbent associates and background check inquiries involving job applicants.  *Id.*, ¶ 9.  Therefore, to determine which of the background check inquiries are responsive to the EEOC's subpoena, each of the 38,051 background check inquiries would have to be reviewed

individually. *Id.* Sears estimates that it would take approximately 14,000 hours to gather and review the 38,051 background check inquiries to determine if they are responsive to the EEOC's requests. *Id.*, ¶ 10.

### 2.     The Associate Services Organization

Another way in which store management may have reported issues relating to employee arrests and convictions during the relevant time period is by calling Sears' Associate Services Organization ("ASO"). Miller Decl., ¶ 11. The ASO is a consulting service staffed by human resources professionals who provide answers to associate and management questions regarding human resources issues. *Id.*

Cases that are responsive to the EEOC's requests may be categorized in one of two ways in ASO's case management system: (1) under the category of Drugs, Alcohol, and Arrests or (2) under the category of Termination. Miller Decl., ¶ 12. Within the category of Termination, responsive cases may be subcategorized in one of two ways: (1) under the subcategory of Integrity or (2) under the subcategory of Violation of Rules. *Id.*

Since January 2006, there have been 14,659 cases that were categorized by ASO as Drugs, Alcohol, and Arrests; Termination – Integrity; and Termination – Violation of Rules. Miller Decl., ¶ 13. Notably, the case management system on which ASO cases are stored cannot determine which cases within the categories of Drugs, Alcohol, and Arrests; Termination – Integrity; and Termination – Violation of Rules are responsive to this request and those that are not. *Id.*, ¶ 14. Thus, to determine which of the cases within these categories for the relevant time period are responsive, each of the 14,659 cases would have to be reviewed individually. *Id.* Sears estimates that it would take at least 730 hours to gather and review the 14,659 cases in the

ASO case management system to determine if they are responsive to the EEOC's requests. *Id.*, ¶ 15.

### 3.   Human Resources Compliance Department

Another way in which store management may have reported issues relating to employee arrests and convictions during the relevant time period is by contacting the Human Resources Compliance Department. Miller Decl., ¶ 16. Sears' Human Resources Compliance Department employs a manager who oversees the Company's background check program. *Id.* In this capacity, the manager receives inquiries and e-mails from store managers relating to arrest and conviction issues. *Id.* Therefore, to respond to the EEOC's subpoena, the Sears would have to review the manager's records and e-mails during the relevant time period. *Id.* Sears estimates that it would take at least 110 hours to review the HR Compliance Manager's records and e-mails for responsive information. *Id.*, ¶ 17.

### 4.   Local Units

Data retrieved from the Inquiry Services and ASO systems and the Human Resources Compliance Department would not be entirely responsive to the EEOC's subpoena, however, because not all responsive cases may have been escalated by local store management. Miller Decl., ¶ 18. Moreover, each responsive case retrieved from the Inquiry Services and ASO systems and the Human Resources Compliance Department may not contain all of the information requested by the EEOC (*e.g.*, what crime an employee's arrest or conviction was for, how Sears came across the information regarding the arrest or conviction that was not reported, and the date of the crime). *Id.* Therefore, to respond to the EEOC's subpoena, Sears would also have send inquiries for responsive information to its approximately 2,000 local units. Sears

estimates that it would take at least 200 hours to conduct inquiries of the 2,000 local units. *Id.*, ¶ 20.

**5.      Complying With The EEOC's Subpoena Would Be Costly And Time-Consuming.**

After all responsive cases are identified from the Inquiry Services system, the ASO system, the HR Compliance Department, and the local units, Ms. Miller, Senior Employment Paralegal, would have to search Sears' PeopleSoft for each employee's social security number, position, race, national origin, store location, dates of hire and termination (if applicable), and last known contact information. Miller Decl., ¶ 21. Each search would take at least 5 minutes per employee. *Id.* At this time, Sears cannot estimate how many employees may be identified through its various searches, or thus how long it would take Ms. Miller to compile the additional requested information. *Id.*

In total, Sears estimates that it would take at least 15,000 hours and cost at least $430,000 to gather and compile the information requested by the EEOC in its subpoena. Miller Decl., ¶ 22. Even in light of Sears' annual operating costs, this is a *significant* expenditure of time and money. *Id.*, ¶ 23. Accordingly, the EEOC's assertion that it "has not requested information that would be unduly burdensome to produce" is without merit. EEOC's Memorandum, p. 13.

Under these circumstances, the burden imposed on Sears is clearly undue, especially considering the irrelevance of the EEOC's nationwide requests with respect to Ms. Johnson's individual Charge. *See United Air Lines,* 287 F.3d at 655 ("The financial and administrative demand placed on UAL is significant and, in light of the tangential need for the information, an undue burden on UAL"); *EEOC v. ABM Janitorial-Midwest, Inc.*, No. 09 C 4707, 2009 U.S. Dist. LEXIS 112039, at *16 (N.D. Ill. Dec. 2, 2009) ("But in balancing the EEOC's legitimate

interest in obtaining what is, at best, marginally relevant information against the substantial challenges of compliance . . . I conclude that the EEOC's voluminous request is overly burdensome); *EEOC v. McCormick & Scmick's*, No. C 07-80065, 2007 U.S. Dist. LEXIS 38049, at *18 (N.D. Cal. May 15, 2007) (finding that compliance with subpoena, which would take 8,925 man-hours, was unduly burdensome).   Accordingly, because it is unduly burdensome, the EEOC's subpoena should not be enforced.

**D.     Certain Of The Subpoena's Requests Are Duplicative And Ambiguous.**

In the alternative, if the Court decides to enforce the EEOC's subpoena requests (which, for the reasons discussed above, it should not), the Court should direct the EEOC to clarify Request No. 5, which is duplicative, vague, and ambiguous.   As discussed above, Request No. 5 is duplicative of Request No. 4, as both requests appear to seek information relating to employees who were terminated pursuant to Sears' Arrest and Conviction Reporting Policy.   To the extent that the EEOC is actually seeking information relating to employees who were terminated by Sears because they were either arrested or convicted of a crime, as opposed to those employees who were terminated due to their *failure to report* an arrest or conviction to Sears, such a request is also duplicative of Request No. 3, which directs Sears to identify, among other things, all employees who reported arrests or convictions to Sears and the actions that Sears took in response to each report, which will provide the EEOC with the information sought in Request No. 5.

## IV.   CONCLUSION

For the reasons discussed above, Sears respectfully requests that the Court deny enforcement of the EEOC's subpoena.

Dated March 17, 2010.                    Respectfully submitted,


                                         s/Erin A. Webber
                                         Erin A. Webber
                                         Stephanie L. Hankin
                                         LITTLER MENDELSON, P.C.
                                         1200 17th Street, Suite 1000
                                         Denver, CO  80202.5835
                                         Telephone: 303.629.6200

                                         **ATTORNEYS FOR RESPONDENT
                                         SEARS, ROEBUCK AND CO.**


### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2010, a true and correct copy of the foregoing **RESPONDENT'S RESPONSE TO APPLICATION FOR AN ORDER TO SHOW CAUSE WHY AN ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED** was electronically filed and served via the CM/ECF system which will send notification of such filing to the following.  The duly signed original is on file at the offices of Littler Mendelson, P.C.

                Rita Byrnes Kittle
                Stephanie Struble
                Equal Employment Opportunity Commission
                Denver Field Office
                303 East 17th Ave., Suite 410
                Denver, CO 80203


                                         s/ Dana Duran
                                         Dana Duran


Firmwide:94429593.2 016144.1282