IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–00288–WDM–KMT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Applicant,

v.

SEARS, ROEBUCK AND CO.,

    Respondent.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

    This matter is before the court on the "Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced" (Doc. No. 1, filed February 10, 2010 [hereinafter "Application"]) and "Memorandum In Support of Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced" (Doc. No. 2, filed February 10, 2010 [hereinafter "Mem."].).  "Respondent's Response to Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced" was filed on March 17, 2010. (Doc. No. 11 [hereinafter "Response].)  This court held a hearing on the Application on April 26, 2010.  This matter is ripe for recommendation.

**BACKGROUND**

The Equal Employment Opportunity Commission ("EEOC" or "Commission") is investigating a charge of race discrimination filed against Sears, Roebuck and Co. ("Sears" or "Respondent") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The Charging Party, Kerrah Johnson, filed a charge of discrimination alleging that Sears discriminated against her on the basis of her race. (Mem., Attach. 2.) Johnson, who is African American, was employed as a cashier at the Sears store located at 14200 East Alameda Avenue in Aurora, Colorado. (*Id.*) In her charge, Johnson alleges that during her employment she was made to perform job duties outside her job description that other non-black cashiers were not required to perform. (*Id.*) She also alleges that she was suspended when she asked for a copy of her timecard to give to the authorities to prove that she was not involved in a crime. (*Id.*)

The EEOC sent the Respondent a notice of the charge and began to investigate whether Title VII had been violated. (*Id.*, Attach. 1 [Decl. of Nancy Sienko, Denver Field Office Director ("Sienko. Decl.")], ¶ 4 and Attach. 3]. As part of its investigation, the EEOC obtained a position statement from Respondent, which was submitted on February 25, 2009. (*Id.*, Attach. 4.) In its statement, Sears alleges that Johnson was suspended pursuant to Sears' arrest policy, which provides that employees are required to report any arrest within five days. (*Id.*, Attach. 5.) According to the policy, when an employee reports that he or she has been arrested, Sears will then make a determination as to whether or not continued employment poses an unacceptable risk to the Company customers, associates, associate morale and/or assets. (*Id.*) Failure to

report an arrest or conviction may result in disciplinary action, up to and including termination. (*Id.*)

According to Sears, in July 2008, Johnson informed Tonja Mills, Cashier Lead and Johnson's direct supervisor, that she had been accused of a crime (robbery) and needed a copy of her time card to prove to the court that she had been working on the day of the incident. (*Id.*, Attach. 4.) Sears asserts Johnson's grandmother also called Ms. Mills and told her that Johnson had been arrested on July 9, 2008. (*Id.*) After Ms. Mills informed Catherine Brown, Human Resources/Office Lead, of the situation, Ms. Brown contacted Sears' Associate Services Organization on July 11, 2008, for guidance on how to proceed. (*Id.*) The Human Resources Consultant at the Associate Services Organization advised Ms. Brown about Sears' Arrest and Conviction Reporting Policy and recommended that Johnson remain unscheduled for up to 60 days. (*Id.*) Respondent states that subsequently, Ms. Brown left Johnson a voicemail informing her that she needed to provide Sears with information relating to the arrest. (*Id.*) Ms. Brown further advised Johnson that if she was cleared of the charge within 60 days, she would be placed back on the schedule. (*Id.*) According to Respondent, Johnson never returned Ms. Brown's voicemail or provided Sears with any additional information relating to her arrest. (*Id.*) Accordingly, Johnson's employment with Sears was terminated for integrity reasons on September 9, 2008. (*Id.*)

On March 6, 2009, the EEOC sent a Request for Information inquiring about concerning Respondent's arrest and conviction policy. Specifically, the EEOC sought the following information for the time period from January 2006 through the present:

1. Produce all written guidance provided to Sears employees regarding the implementation of Sears' policy requiring the reporting of arrests and convictions (which policy was provided to the EEOC as Enclosure Number 3 to Sears' position statement).

2. Produce all documentation that clarifies the purpose and intent behind Sears' policy requiring the reporting of arrests and convictions and all documentation that explains how Sears expects the policy to be carried out.

3. Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy. Provide the employee's name, position, race, national origin, whether the employee reported an arrest or a conviction, what crime the arrest or conviction was for, each employee's store location, each employee's social security number, and what action Sears took in response to the report.

4. Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions. Provide the employee's name, position, race, national origin, last known contact information, how Sears came across the information regarding the arrest or conviction that was not reported, and what the arrest or conviction was for.

5. Identify all employees terminated due to a conviction. Provide the employee's name, position, race, national origin, each employee's date of hire, what crime each employee committed, the date of the crime(s), the date of the termination, each employee's store location, and each employee's social security number.

6. Provide a copy of the employee handbook, including EEO policy, background checks, and criminal record policies.

7. Provide a copy of Charging Party's job description.

8. Provide a copy of Charging Party's personnel records.

9. Provide a copy of any and all documentation regarding Charging Party's suspension and termination.

10. Copies of all documentation regarding any call Charging Party may have made to the employee relations ethics hotline.

(*Id.*, Attach. 6.)  On March 30, 2009, the EEOC received a response from Respondent to its Request for Information.  (*Id.*, Attach. 7.)  In its response, Sears objected to certain of the EEOC's requests, including the specific requests listed above, on the grounds that they were overly broad, unduly burdensome, and not relevant.  (*Id.*)  However, Sears did provide additional information and documentation in response to several of the EEOC's requests.  (*Id.*)  Because Sears refused to provide the requested information concerning its arrest/conviction policy, the EEOC served a subpoena on Sears requesting the same information.  (*Id.*, Attach. 8.)  Specifically, the EEOC requested the following:

1. Produce all written guidance provided to Sears employees regarding the implementation of Sears' policy requiring the reporting of arrests and convictions (which policy was provided to the EEOC as Enclosure Number 3 to Sears' position statement).

2. Produce all documentation that clarifies that purpose and intent behind Sears' policy requiring the reporting of arrests and convictions and all documentation that explains how Sears expects the policy to be carried out.

3. Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy from January 1, 2006 to the present. Provide the following:
    a. employee's name,
    b. position,
    c. race
    d. national origin
    e. whether the employer reported an arrest or conviction,
    f. what crime the arrest or conviction was for,
    g. each employee's store location,
    h. each employee's social security number,
    I. what action Sears took in response to the report.

4. Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions.  Provide the following:
   a. employee's name,
   b. position,
   c. race,
   d. national origin,
   e. last known contact information,
   f. how Sears came across the information regarding the arrest or conviction that was not reported,
   g. what the arrest or conviction was for.

5. Identify all employees terminated due to Sears' arrest/conviction policy from January 1, 2006 to the present.  Provide the following:
   a. employee's name,
   b. position,
   c. race,
   d. national origin,
   e. date of hire,
   f. what crime each employee committed,
   g. the date of the crime(s),
   h. the date of the termination,
   i. each employee's store location,
   j. each employee's social security number.

6. Provide documentation of Sears' policy regarding background checks and criminal records.

7. Provide a copy of any and all documentation regarding the charging party's suspension and termination.

(*Id.*, Attach. 8.)

On May 8, 2009, Sears responded to the EEOC's subpoena.  (*Id.*, Attach. 10.)  Sears provided complete responses to Request Nos. 1, 2, 6, and 7.  (*Id.*)  However, Sears objected to Request Nos. 3, 4, and 5, and provided information relating only to the particular Sears store at which Johnson worked (Store No. 1141), as follows:

3. Identify all employees who have reported arrests and/or convictions pursuant to Sears' policy from January 1, 2006 to the present. Provide the following: employee's name, position, race, national origin, whether the employer reported an arrest or conviction, what crime the arrest or conviction was for, each employee's store location, each employee's social security number, and what action Sears took in response to the report.

**Response: Respondent objects to the request on the basis that it is overly broad, unduly burdensome and not relevant, for reasons described herein and in the position statement. Subject to and without waiving its objection, Respondent provides the following response. The only associate, at Respondent's store located at 14200 East Alameda Avenue, Aurora, CO 80012 (Sears #1141), other than Complainant, who has a reported arrest during the above-referenced time period is Receiving Associate [name redacted][1] (White; national origin unknown).**

**Mr. [name redacted] informed Respondent that he was arrested in connection with an incident in which he grabbed his ex-wife's arm and led her out of his house, after she had entered his home and hit him. Based on the police documentation provided by Mr. [name redacted], Respondent determined that Mr. [name redacted] did not pose an unacceptable risk to the Company's customers, associates, morale and/or assets. Accordingly, Respondent took no action against Mr. [name redacted].**

4. Identify all employees terminated by Sears for violation of its policy requiring reporting of arrests and convictions. Provide the following: employee's name, position, race, national origin, last known contact information, how Sears came across the information regarding the arrest or conviction that was not reported, and what the arrest or conviction was for.

**Response: Respondent did not terminate any associates for failing to report an arrest and/or conviction at Respondent's store located at 14200 East Alameda Avenue, Aurora, CO 80012 (Sears #1141) during the period January 1, 2006 to present.**

---

[1] The name of the employee has been redacted by this court to protect his identity.

> 5. Identify all employees terminated due to Sears' arrest/conviction policy from January 1, 2006 to the present. Provide the following employee's name, position, race, national origin, date of hire, what crime each employee committed, the date of the crime(s), the date of the termination, each employee's store location, and each employee's social security number.
>
> **Response: See responses to #3 and #4 above.**

(*Id.*, Attach. 10.) The EEOC argues that Sears' response is insufficient. The EEOC states it is requesting information for all employees affected by Sears' arrest/conviction policy to determine whether the policy has a disparate impact on minority employees throughout the company, and thus whether Johnson was discriminated against when she was removed from the schedule and ultimately terminated, and whether other minority employees have been adversely affected by the policy.

## LEGAL STANDARDS

Congress has empowered the EEOC to investigate charges of discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-5(b). In connection with its inquiry, the EEOC is entitled to access "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation." § 2000e-8(a). To obtain such evidence, the EEOC may exercise all of the powers conferred upon the National Labor Relations Board by 29 U.S.C. § 161, including the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas. § 2000e-9. As noted above, however, "unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their

jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.' " *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) (quoting § 2000e-8(a); footnote omitted). This statutory scheme places the burden on the EEOC to demonstrate the relevance of the information requested in its subpoena. *See EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir.2001) ("The district court will enforce the EEOC's subpoenas when the EEOC carries its burden of demonstrating that the information requested is relevant to the charge filed against the employer.").

The Supreme Court has explained that the "relevancy" limitation on the EEOC's investigative authority is "not especially constraining." *Shell Oil*, 466 U.S. at 68. Moreover, courts have traditionally allowed the EEOC access to any information "that might cast light on the allegations against the employer." *Id.*; *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 813–14 (1984) (adopting a comparably expansive definition of "relevance" in the analogous context of an IRS subpoena). Although the Supreme Court has advised that the relevance standard must not be interpreted so broadly as to render the statutory language a "nullity," *Shell Oil*, 466 U.S. at 68, the Tenth Circuit has explained "(1) that an EEOC administrative subpoena 'is enforceable even though no "probable cause" has been shown,' (2) that even some requests we 'previously considered to be administrative "fishing expeditions" are often permitted,' and (3) that such subpoenas 'may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose.'" *E.E.O.C. v. Dillon Companies, Inc..*, 310 F.3d 1271, 74–75 (10th Cir. 2002) (quoting *EEOC v. Univ. of N.M., Albuquerque*, 504 F.2d 1296, 1303 (10th Cir. 1974)).

If the EEOC meets its burden, the burden shifts to the respondent to prove that the subpoena is overbroad or unduly burdensome. That burden is difficult to meet. *See, e.g., E.E.O.C. v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir.1986); *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir.2002). Compliance with a subpoena is excused if it "threatens to unduly disrupt or seriously hinder normal operations of a business." *Maryland Cup Corp.*, 785 F.2d at 479. Alternatively, if the cost of gathering the information would be "unduly burdensome in the light of the company's normal operating costs," the subpoena should not be enforced. *Id.*

## ANALYSIS

There is no dispute the EEOC has the authority to investigate Johnson's allegations that Sears engaged in racial discrimination in violation of Title VII. Nor is there any dispute that the procedural prerequisites have been fulfilled. Rather, Sears argues that the subpoena should not be enforced because the information sought is not relevant to the allegations in the charge.

### A.     *Geographic Overbreadth*

Sears argues that the EEOC "seeks to expand its investigation of Ms. Johnson's Charge, which alleges only that she, *individually*, was discriminated against because of her race, into a nationwide fishing expedition 'concerning employees affected by Sears' arrest/conviction policy.'" (Resp. at 10.) The EEOC argues their investigational range and duty is not limited to the store where Johnson was employed. At the hearing, the EEOC argued that the policy at issue is a nationwide policy applied by someone in Sears' headquarters and not applied by a person in

particular store or region, nor was the policy applied uniquely to this store or region. As such, the EEOC states it wishes to investigate the policy to see how it is applied.

In its Application, the EEOC cites several cases in support of its argument that a nationwide subpoena should be enforced based on an individual charge of discrimination. Sears argues, and the court agrees, that these cases differ from the case at bar because in each of the cases cited by the EEOC, the Charging Party had asserted class allegations in his or her Charge of Discrimination. *See EEOC v. Technocrest Systems, Inc.*, 448 F.3d 1035, 1040 (8th Cir. 2006) ("Because the six charging parties alleged not only individual discrimination but also discrimination against all Filipino employees of Technocrest, we find that the DOL and INS documents for all employees and the personnel files for all employees are relevant to a determination of whether Technocrest illegally discriminated on the basis of national origin."); *EEOC v. Aaron Brothers, Inc.*, 620 F. Supp. 2d 1102, 1007 (C.D. Cal. 2009) (finding that national data sought by the EEOC was "facially relevant and material" to the Charging Party's allegation that "[o]ther females as a class are paid less than males"); *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 161 (S.D.N.Y. 2000) (enforcing subpoena for Company-wide lists of employees and personnel records where the Charging Party made class allegations that "there has been continuous mistreatment of myself and other African-Americans in the Company"); *EEOC v. Patterson UTI Drilling, Inc.*, 09-cv-1562-PAB, Docket No. 21, pp. 5-6 (D. Colo. Oct. 23, 2009) (enforcing subpoena for companywide information where Charging Party alleged that he "witnessed others being subjected to ethnic slurs. Non-Hispanic Caucasian workers were treated more favorably than I and the other Hispanics were being treated. My fellow Hispanic

workers and I were prohibited from speaking Spanish on the job sites."). In this case, however, Ms. Johnson has made no allegation, and there is no evidence, that any other employee was suspended or terminated due to discrimination based on Sears' policy regarding reporting arrests or convictions.

The EEOC in *Patterson UTI Drilling* argued that a nationwide subpoena was appropriate because during the course of its investigation in that case, the EEOC had revealed six other allegations of similar discrimination across the country against Patterson and that where there is evidence of discrimination, even if it is not listed in the original charge, the EEOC has a duty to investigate it. The EEOC cites two Fourth Circuit cases, *EEOC v. General Electric Company*, 532 F.2d 359 (4th Cir. 1976), and *General Telephone v. EEOC*, 446 US 318 (1980), in support of its argument that a charge is the starting point and a "springboard" for a reasonable investigation by the Commission to determine whether the employer engaged in discriminatory practices. However, *General Electric Company* and *General Telephone* both arose in the context of a class action complaint, and the issue was whether or not the pre-certified class gave the commission the ability to issue a subpoena that had the breadth of the class in it. As such, District Judge Philip A. Brimmer found in *EEOC v. Patterson UTI Drilling, Inc.*, 09-cv-01562-PAB, that these cases did not apply where the case was not a class action case. This court agrees that *General Electric Company* and *General Telephone* do not apply here, where there is only one individual allegation of discrimination. The EEOC's argument is even less compelling here than it was in *Patterson*, where the EEOC stated it had uncovered six other allegations of similar

discrimination. However, in this case the EEOC concedes they have no evidence of other similar discrimination allegations.

The EEOC also argued at the April 26th hearing that the information provided by Sears to date—that one black female was terminated under the policy and that one white male was not terminated as a result of the policy—is inadequate to investigate a possible disparate impact claim, which may be proved through statistics. Citing *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303 (10th Cir. 2005), the EEOC also argued that courts have shown statistics are relevant to pretext. However, the *Jaramillo* court stated that evidence of pretext may include "'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria.'" *Jaramillo*, 427 F.3d at 1308 (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)). The EEOC has provided no information or evidence regarding any of the other factors listed in *Jaramillo*. Without anything to support the EEOC's argument that the policy may have a disparate impact or may show pretext, the court finds the EEOC's argument to be irrelevant to Ms. Johnson's claims and also finds the EEOC has failed to meet its burden of demonstrating the relevance of the information requested in its subpoena.

Sears has proffered that Store 1141, the store at which Ms. Johnson was employed, employs approximately 127 people. Store 1141 is located in District 175, which is comprised of ten stores. District 175 is part of a Region containing a total of 140 stores. At the hearing, the

EEOC indicated its willingness to narrow the scope of the subpoena to the stores contained in the 140 store Region.

Balancing the obligation of the EEOC to investigate and considering the relevance of statistical evidence in a discriminatory impact case against the burden upon Sears to comply with the subpoena, the court finds the scope of the subpoena should be limited, at this time, to the ten stores in District 175.  The information from the ten stores will give the EEOC enough statistical information to determine if there is any evidence to support an allegation that the policy is being applied in a discriminatory manner.  The EEOC thereafter may revisit this issue to seek information from additional stores or districts, if justified on the basis of the information obtained about stores within the same District as the Complainant's store.

### B.     *National Origin*

In its Application, the EEOC appears to argue that to the extent the arrest/conviction policy affects or has a disparate impact on <u>any</u> minority, it needs a methodology to determine whether Hispanic/Latino employees may be adversely impacted by the policy.  To the extent Sears classifies Hispanics or Latinos as White, rather than classifying them as a separate race, the EEOC argues that information concerning national origin would be the primary way to capture this category of employee.  If Sears lists a separate race category for Latinos or Hispanic employees, however, the EEOC advised the court it would settle for that information as being indicative of race for Hispanic or Latino employees.

Throughout its Memorandum, the EEOC acknowledges that Ms. Johnson has alleged only discrimination based on race.  Ms. Johnson herself did not state in her Charge that her claim

was based on national origin or check the "National Origin" box on the Charge. (Mem., Attach. 2.) The court finds the EEOC has not met its burden of demonstrating that the national origin information it seeks in Request Nos. 3, 4, and 5 is relevant to Ms. Johnson's allegations of race discrimination. The court finds Ms. Johnson's use of the word "Black" to describe her race is insufficient to alert the EEOC and Sears that she is also alleging a national origin claim. *See Rodgers v. Arlington Heights Sch. Dist. No. 25*, 171 F.Supp.2d 773, 777 (N.D. Ill. 2001) (national origin claim dismissed as outside the scope of the plaintiff's EEOC charge, on which she described her claim as one based on her race, which she described as "Black."); *Jones v. Breman High School Dist. 288*, No. 08CV3548, 2009 WL 537073, at *3 (N.D. Ill. Mar. 4, 2009); *Cordero v. Heyman*, No. 97 Civ. 0435, 1998 WL 730558, at *5 (S.D.N.Y. Oct.19, 1998) (finding that where plaintiff, an "Hispanic of Puerto Rican national origin," alleged only racial discrimination on his EEOC charge, his claim of discrimination based on national origin was not "reasonably related" because he did not state in his administrative complaint that "he was denied a promotion because he was Puerto Rican"). The factual allegations in the Charge say nothing about where Ms. Johnson was born or which country her ancestors came from. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

The clear and unequivocal tone of Ms. Johnson's allegations of race discrimination set forth in the EEOC charge may support a race claim; however, her allegations do not support a national origin allegation. While the Court understands the EEOC's logic in attempting to identify as a race Hispanic or Latino employees, inquiry into national origin, a term of art in the

area of discrimination law, is simply unjustified under the facts of this case. As such, this court finds the requests for national origin information should be omitted from the subpoena.

### C. *Undue Burden*

The court will not excuse compliance with an EEOC subpoena as burdensome unless the respondent establishes that compliance seriously threatens to disrupt or hinder the normal operation of a business. *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993). Sears argues that complying with the EEOC's subpoena would be significantly costly and time-consuming for Sears. Sears states it does not maintain the information requested in the subpoena in one centralized location and therefore does not have one centralized way to search for this information. (Resp., Ex. A, ¶ 5 [Decl. of Cathy Miller (hereinafter "Miller Decl.")].) Sears argues it would have to gather information from four different sources: (1) the Inquiry Services Team; (2) the Associate Services Organization ("ASO"); (3) the Human Resources Compliance Department; and (4) the local stores (referred to as "units"). (*Id.*, ¶ 6.)

However, the court finds that, with the limitations recommended herein, Sears has not and cannot meet its burden of showing that its compliance with the subpoena, as restricted, would seriously disrupt or hinder the normal operation of such an expansive organization.

### D. *Duplicative Requests*

In its Response, Sears objects to the EEOC's Request No. 5 as being duplicative, vague, and ambiguous. At the hearing, however, Sears withdrew its objection to Request No. 5. As such, the court need not address this argument.

WHEREFORE, for the foregoing reasons, this court respectfully

RECOMMENDS that the EEOC Administrative Subpoena directed to Sears be revised and limited as follows:

1. The subpoena should be limited, at this time, to the ten stores in District 175; and

2. The subpoena should omit any requests seeking national origin information.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of*

*Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of June, 2010.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge